# Supreme Court of the State of New York
# County of New York

SAMANTHA SIVA KUMARAN,

                        *Plaintiff,*

-against-

THOMAS R. KADLEC

                        *Defendant.*

Index No.
Date purchased: July 1, 2022
Plaintiff designates New York County as the place of trial. The basis of the venue is the transfer from Southern District Of New York 20-CV-3668 to New York State, plaintiff's residence and plaintiff's principal office at 42 Broadway, 12th Floor New York, New York 10004

## Summons with Notice

To the above-named defendant:

      **You are hereby summoned** to serve a notice of appearance on plaintiff's attorneys within twenty (20) days after the service of this summons with notice, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear, judgment will be taken against you by default for the relief demanded in the annexed notice.

Defendants' addresses:

Thomas R. Kadlec,
c/ ADM Investor Services
141 W. Jackson Blvd. Suite 2100A
Chicago, IL 60604

c/o
Daryl Schumacher
Counsel
Kopecky Schumacher Rosenburg LLC
120 N. Lasalle St.
Suite 2000
Chicago, IL 60602

By Samantha Siva Kumaran
Individual Plaintiff / Pro-Se

//SSK//Electronically Signed

119 West 72nd Street, #204
New York, NY 10023
212-431-5098
917-636-1364
Samantha@timetricsrisk.com

c/ Nefertiti Companies
42 Broadway, 12th Floor
New York, NY 10004

## NOTICE

This is an action for fraud, aiding and abetting fraud, conversion, aiding and abetting conversion, misappropriation of trade secrets, misappropriation of confidential information, unfair competition, unjust enrichment, unfair competition, gross negligence, civil conspiracy, tortious interference and breach of duty of case and negligence under New York State law, as well as fraudulent and deceptive business practices under New York General Business law. Kadlec, in his individual capacity serves as President of ADM Investor Services ("ADMIS"). Plaintiff Kumaran, a resident of New York City, owns and operates a professional risk management advisory and consulting company in New York, and became an Associated Person ("AP") of a Commodities Trading Advisor ("CTA") in 2017. Kumaran is the sole owner the intellectual property, trade secrets and risk management services and technologies.

During the period 2014 – 2017, Kadlec as the control person of ADMIS and joint maker of the company's statements, signed and authorized numerous public disclosure documents that were either signed by him, or authorized by him, that concealed material information or made misrepresentation on the financial arrangements on their trading to induce Plaintiff to do business with his company and disclose confidential and proprietary information. Kadlec's conduct was with the intent to fraudulently induce traders to do business with ADMIS, while concealing that in reality, the traders' accounts would be guaranteed by and disseminated to their competitors High Ridge Holdings and its managers. Kadlec, as the President of ADMIS, as the control person, at all times, directed, authorized the misrepresentations and omissions that concealed material information with intent to defraud concealed that Plaintiff's valuable proprietary data and competitive trade secrets, electronic records would be disseminated to its competitors, and that its trading profits would be purloined. Kumaran relied upon the omission in choosing to do business.

Kadlec also authorized, by signature, several commercial arrangements with the owners of a disbarred clearing merchant, formerly operating under the name Vision financial Markets, LLC. Kadlec authorized and directed his company as the control person, to conceal those material commercial arrangements, and thus fraudulently induce Kumaran to transact business and disclose proprietary information, and among those material fraudulent omissions were knowledge that Kadlec signed and authorized agreements, with the owners Boshnack and Rothman to place individual guarantees and withdraw fees from Plaintiff's account. Kadlec knew and intended that fees in excess of 18% a year would be purloined without consent. As ongoing fraudulent and deceptive business practices, Kadlec intended to and directed his company and others to conceal the arrangements, and intended to not seek Plaintiff's consent. Kumaran relied on the material omissions, and but for the omissions and concealments would never have transacted business, disclosed its CTA electronic data, or suffered the extensive and extraordinary damages herein. All activities in the fraud, fraudulent solicitations were made into this district in New York City, New York. In addition, Kadlec authorized a provision of directly competing commercial risk management services by Boshnack and Rothman to have discretionary authority and affect margin controls on Plaintiffs trading – all without Kumaran's consent and knowledge. Plaintiff also owns and manages a professional risk advisory company, with significant competitive technologies in risk measurement and quantification. In addition, Kadlec misappropriated proprietary risk management information from Plaintiffs' account, including using Plaintiff's IP and confidential data as a testing and debugging facility for dozens and dozens of errors in third party risk management group, all without fair market renumeration and causing significant interference and losses to Plaintiff. Under the hornbrook rules of markets, Kadlec and ADMIS were required to

disclose any provision of third party risk management services and seek Kumaran's consent, which he did not. Kadlec knowingly participated in and directed the scheme to conceal these illicit risk management services not just from Plaintiff, but also in required regulatory disclosures. Kadlec continued to conceal and omit, even when directly questioned by Kumaran, in New York City, that competitors High Ridge Holdings and Vision Investment Advisors' had acquired and were using Kumaran's information and interfered in her CTA and trading account.

In all cases, Kadlec, knowingly and with scienter and intent to defraud, failed to obtain Plaintiff's consent and authorization, and with wanton disregard for their rights, approved and authorized disclosure, acquisition and use of their confidential and proprietary information for use in unfair competition. In all cases with the intent to conceal the activities from Plaintiff, Kadlec authorized and perpetuated the concealment of the illegal activities, which resulted in gross negligence in risk management and risk management errors, and substantial losses for Plaintiff.

An action was initiated in Federal Court, Southern District of New York on May 8, 2020 – Case 20-CV-3668 against Defendant Kadlec. By Order on June 2, 2022 ECF185 the Court ruled that " The Court also adopts the R&R's recommendation to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Tom Kadlec. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." "[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein*, 464 F.3d at 262. "In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity . . . ." *Id.* Because the Court has dismissed all of Plaintiffs' federal claims and there is no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims against Tom Kadlec. *See* 28 U.S.C. § 1367(c)(3); *see also Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 285 (S.D.N.Y. 2019) (declining to exercise supplemental jurisdiction over some, but not all, of the plaintiff's remaining state law claims after all the federal claims were dismissed). This action therefore transfers to New York State Court. Because Federal Court has declined supplement jurisdiction over the New York State law claims, Plaintiff transfers all state law claims under New York law to New York State Court.

Plaintiff also seeks damages for Kadlec's fraud, aiding and abetting fraud, misrepresentation, and detrimental reliance. Plaintiff has incurred (and continue to incur) significant legal costs, expenses and other damages to compensate for Kadlec's foregoing torts, destruction to her CTA, Nefertiti Risk Capital Management, LLC depletion of her assets, business, properties and livelihood and have incurred cumulative damages for legal actions which are ongoing and estimated to exceed $2,900,000. On March 2, 2022, as a direct consequence of Kadlec's fraud and foregoing torts, Nefertiti Risk Capital Management, LLC, a single member LLC owned solely by Kumaran was also dissolved in New York State. In accordance with the incumbency operating agreement, the single member LLC was wound up and closed within thirty (30) days. Therefore Kumaran is also the successor-in-interest of Nefertiti Risk Capital Management, LLC and all rights of the single member LLC have transferred to Kumaran individually, and as the real party in interest brings those claims as well.

In addition Plaintiff has suffered other compensatory and other damages for Kadlec's tortious conduct, interference in her livelihood, fraud, gross negligence and misrepresentations. This conduct includes his ongoing fraud and omissions in April 2018, as well as intentional affirmative steps to conceal documents until October, 2019 which Kadlec had both a fiduciary and

Case 1:22-cv-08095-GHW-SDA   Document 1-1   Filed 09/22/22   Page 5 of 5

statutory duty to disclose, leaving Plaintiff suffering extensive ongoing damages.

The relief sought is a judgment of this Court awarding:
- (i) compensatory damages against defendant in an amount to be determined at trial, but believed to be in excess of $2,900,000;
- (ii) costs and disbursements;
- (iii) attorney's fees;
- (iv) pre-judgment interest; and
- (v) such other and further relief as is just and proper.

Upon your failure to appear. Judgement will be taken against you by default for the sum of $2,900,000 with interest, and the cost of this action.